UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
GABRIELE NYENHUIS,              :
                                :
     Plaintiff,                 :
                                :
     v.                         :    Case No. 3:08CV069(AWT)
                                :
THE METROPOLITAN DISTRICT       :
COMMISSION, CHARLES P. SHEEHAN, :
SERGEANT JAMES HARDING, and     :
OFFICER MATTHEW DANVILLE,       :
                                :
     Defendants.                :
-------------------------------x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Gabriele Nyenhuis ("Nyenhuis"), brings this action against the defendants, the Metropolitan District Commission (the "MDC"), Sergeant James Harding ("Harding") in his official and individual capacities, and Officer Matthew Danville ("Danville") in his individual capacity.[1] The Revised Amended Complaint contains the following claims: Count One, as to all defendants, violation of 42 U.S.C. § 1983, based on the First Amendment; Count Two, as to all defendants, violation of 42 U.S.C. § 1983, based on denial of equal protection of the laws; Count Three, as to the MDC, violation of Connecticut General Statutes § 31-51q; Count Four, as to defendants Harding, in his individual capacity, and Danville, violation of 42 U.S.C. § 1983, based on deprivation of liberty by means of a defamatory statement, i.e., a "stigma-plus" claim; Count Five, as to

---

[1] The plaintiff withdrew the complaint as to Charles P. Sheehan ("Sheehan"). (See Doc. No. 16.)

defendants Harding, in his individual capacity, and Danville, defamation; Count Seven, as to the MDC, a Monell claim pursuant to 42 U.S.C. § 1983; and Count Eight, as to Harding, in his individual capacity, and Danville, intentional infliction of emotional distress. The defendants have moved for summary judgment on all the remaining counts. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

## I. FACTUAL BACKGROUND

The MDC is a municipal corporation created and existing as a political subdivision of the state of Connecticut. The MDC Police Department protects and patrols approximately 30,000 acres of property owned by the MDC in Connecticut. The plaintiff was hired by the MDC Police Department in July 2002.

### A. CHRO/EEOC Complaint

In 2003, the plaintiff began experiencing a series of discriminatory acts relating to her age and gender, including an incident where her supervisor, defendant Harding, harassed and yelled at her and treated her differently from a younger female officer. In June 2005, the plaintiff and another female officer filed complaints with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") against the MDC and Harding. The plaintiff's CHRO complaint claimed age and sex discrimination. In it, the plaintiff alleged that she had been "poorly evaluated on or about March 2005"; that she had been continuously

"retaliated against on the basis of [her] participation in a civil rights issue . . ."; that she had been slandered; and that defendant Harding had "revealed her private, confidential medical information" to a third person. (Defs.' Mot. Summ. J. ("Defs.' Mot.") (Doc. No. 59) Ex. L) The plaintiff's CHRO complaint was dual-filed with the Equal Employment Opportunity Commission (the "EEOC").

The MDC then retained the services of UHY Advisors ("UHY"), a business consulting firm, to evaluate the MDC Police Department. UHY's objective "was to conduct a limited operational review of the Patrol Division to ascertain the validity of several complaints by employees . . . [alleging] instances of management retaliation and derogatory comments . . . favoritism and unequal treatment of officers." (Pl.'s Opp'n Defs.' Mot. Summ. J. ("Opp.") (Doc. No. 92) Ex. 3 at p.2) With the evaluation underway, the plaintiff withdrew the CHRO and EEOC complaints. In September 2005, UHY identified several areas of deficiencies in the MDC with respect to its operations; however, UHY did not find any information "that conclusively substantiate[d] allegations of management retaliation and favoritism." (Id. at 5)

**B. Atkins Incident**

On April 19, 2006, the plaintiff worked the evening shift and was assigned to the West Hartford Reservoir. The plaintiff closed half of the West Hartford Reservoir gate early to prevent

people from coming in.  After closing half the gate, the plaintiff was involved in an incident with Stephen Atkins ("Atkins"), a West Hartford resident who was a frequent visitor to the West Hartford Reservoir.  The reservoir was open to the public until 8:00 p.m.  The plaintiff closed half the gate at 7:25 p.m.  Atkins entered the reservoir soon after she did so.  The plaintiff told Atkins that the reservoir was closed, and Atkins informed the plaintiff that she should leave him alone and he was just walking his dog.  Atkins proceeded to take his dog for a walk.  The plaintiff contacted Danville, her backup officer.  Danville agreed to come to the scene and assist the plaintiff, but he advised the plaintiff that it would take him awhile to get to there because he was in Winsted.  While Danville was en route to the reservoir, Danville contacted Harding to notify him that he was leaving his assignment to backup the plaintiff, and to report on the situation.  Harding stated to Danville that they could not prevent people from entering the reservoir before 8:00 p.m.

Meanwhile, Atkins returned from walking his dog in the reservoir and walked towards his vehicle.  His walk had lasted approximately 10 minutes.  The plaintiff approached Atkins and asked him for identification.  Atkins ignored her and went to his vehicle.  Atkins had begun to turn his vehicle around to exit the reservoir when the plaintiff approached the driver's side of the vehicle on foot.  There was an exchange of words between the

-4-

plaintiff and Atkins, and Atkins began to drive towards the gate. The plaintiff sprayed her department-issued pepper spray at Atkins and his vehicle as he was driving towards the gate.

The plaintiff contacted Danville a second time, alerting him to the events that had just taken place, including the fact that she had pepper sprayed Atkins' vehicle. The plaintiff also called the West Hartford Police Department (the "WHPD") and spoke to Officer Nicholas Roman ("Roman") about the incident. The plaintiff did not tell Roman that she had used pepper spray during the incident. When Roman called the plaintiff to report that assistance would be provided, the plaintiff told Roman that Danville was coming to assist her and she no longer needed assistance from the WHPD. Danville arrived at the West Hartford Reservoir at approximately 7:50 p.m. The plaintiff stated that she wanted to arrest Atkins for trespassing and interfering. Danville did not believe there was probable cause to arrest Atkins and told the plaintiff so. No arrest was made.

**C. Investigation and Arrest of Nyhenuis**

On April 20, 2006, Atkins contacted the WHPD to lodge a complaint against the plaintiff. Thereafter, Harding was contacted by the WHPD and advised that a citizen wanted to make a complaint. Harding met with Atkins at the WHPD station. Atkins told Harding that he wanted to make a civilian complaint of assault. Harding then talked with the WHPD about whether it could conduct the investigation with respect to Atkins' complaint

because Harding did not want to investigate a member of his own department. Harding met with MDC chief executive officer Sheehan, an individual from human resources and an officer who was second in command to alert them to the incident involving Atkins and to place the plaintiff on administrative duty so the plaintiff would not be interacting with Atkins until the matter was resolved. Later that day, the plaintiff was placed on paid administrative duty. Harding took the plaintiff's gun, sent the plaintiff home and told her to write a report about the incident.

On April 23, 2006, Danville submitted a report on the Atkins incident. On April 24, 2006, the plaintiff submitted a report to Harding on the Atkins incident. On April 25, 2006, the WHPD agreed to conduct an investigation into the criminal aspects of Atkins' complaint. Lieutenant Joseph LaSata ("LaSata") was assigned to investigate Atkins' complaint. As part of the investigation, LaSata interviewed Atkins, Harding, Danville, Roman and a citizen named Philip Mays, who was a witness to the incident. The plaintiff declined to be interviewed, but submitted a case report on May 3, 2006. Atkins submitted a written statement in which he accused the plaintiff of using excessive force and referred to her as a "menace to the community." (Defs.' Mot. at Ex. L) Mays corroborated Atkins' version of the incident. LaSata identified a number of inconsistencies in the report submitted by the plaintiff and the accounts of the incident given by Mays and Atkins. He concluded

that the plaintiff had submitted and signed an official MDC police report knowing that the information in it was false, and that she had accused Atkins of criminal offenses that had not been comitted.

On June 7, 2006, after the WHPD investigation was completed, the WHPD issued a warrant for the plaintiff's arrest charging her with one count of Assault in the Third Degree in violation of Conn. Gen. Stat. § 53a-61, one count of Reckless Endangerment in the Second Degree in violation of Conn. Gen. Stat. § 53a-64, and one count of Falsely Reporting an Incident in the Second Degree in violation of Conn. Gen. Stat. § 53a-180c.  The plaintiff was arrested on June 14, 2006.  On November 6, 2007, after a trial in Connecticut Superior Court in Hartford, the plaintiff was found not guilty on all charges.  On November 8, 2007, the plaintiff returned to her patrol duties with the MDC.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d

33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

**III. DISCUSSION**

**A. Counts One and Three: § 1983 First Amendment Retaliation and Conn. Gen. Stat. § 31-51q**

"Connecticut courts have concluded that the application of [Conn. Gen. Stat.] section 31-51q is coextensive with that of the First Amendment, and therefore, the two provisions are to be interpreted identically." Baldyga v. City of New Britain, 554 F. Supp. 2d 268, 278 (D. Conn. 2008). "To support a claim that he was retaliated against for his speech, plaintiff must show that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the

adverse employment action. . . . Speech is [on] a matter of public concern if relates to any matter of political, social, or other concern to the community." Id. (citations and internal quotation marks omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999). "Where the speech is on a matter of personal interest only, the 'government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary . . . .'" Baldyga, 554 F. Supp. 2d at 278(quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).

   The plaintiff contends that she was retaliated against in connection with the Atkins incident because she had filed her CHRO/EEOC complaint. She asserts that the CHRO/EEOC complaint dealt with the operation of the MDC and its police department, and with the MDC's failure to address systemic issues with respect to the police department. However, the plaintiff's CHRO/EEOC complaint references only specific instances of discrimination against the plaintiff because of her age and/or gender and retaliation against the plaintiff. There is no indication in the plaintiff's CHRO/EEOC complaint that the plaintiff was attempting to speak on a matter of public concern, as opposed to matters of personal interest.

Thus, the plaintiff has not created a genuine issue of material fact as to whether she was retaliated against because she exercised her First Amendment rights. Accordingly, the motion is being granted as to Counts One and Three.

**B.    Count Two: § 1983 Equal Protection**

In Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), the United States Supreme Court stated that "[i]n concluding that the class-of-one theory of equal protection has no application in the public employment context - and that is all we decide - we are guided, as in the past, by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" 553 U.S. at 607. See Clayton v. City of Middletown, 564 F. Supp. 2d 105, 115 (D. Conn. 2008)(applying Engquist to municipalities).

In the instant case, the plaintiff is employed by a municipal corporation. Accordingly, the motion is being granted as to Count Two.

**C.    Count Four: § 1983 Deprivation of Liberty**

"A § 1983 liberty interest claim . . . referred to as a 'stigma plus' claim . . . requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, 'that is capable of being proved false, and that . . . she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" Velez v. Levy, 401 F.3d 75, 87 (2d Cir.

2005)(citation omitted; internal quotation marks omitted). "[B]ecause [a] free-standing defamatory statement . . . is not a constitutional deprivation, but is instead properly viewed as a state tort of defamation, . . . the 'plus' imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty - for example, the loss of employment . . . or the termination or alteration of some other legal right or status." Id. at 87-88 (citations omitted; internal quotation marks omitted). "Burdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property, . . . and the termination of a plaintiff's government employment . . . Other circuits have found that direct interference with a plaintiff's business may also constitute a 'plus' under this doctrine. . . . However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)(citations omitted).

Assuming arguendo that the plaintiff can establish that a defamatory statement was made, the plaintiff has failed to create a genuine issue of material fact as to whether she suffered an adverse action that restricted her liberty. The plaintiff contends that she suffered such an adverse action because she used her vacation and earned time to attend hearings as a result of her arrest in connection with the Atkins incident and she had

-12-

to meet with her attorney and prepare for court to defend against the criminal charges against her. She states that she used 192 hours of sick time, 47.5 hours of earned time and 249.5 hours of vacation time.

However, mere financial harm to the plaintiff as a result of the alleged defamation is not sufficient to constitute the state-imposed burden for purposes of a stigma-plus claim. The Second Circuit observed in Sadallah that damage to business reputation, deprivation of the good will in a business, and discouraging customers from patronizing a business are "not 'in addition to' the alleged defamation . . . but rather are direct 'deleterious effects' of that defamation." Sadallah, 383 F.3d at 39. "A generalized allegation of financial harm is insufficient to meet the required 'tangible injury' element for a § 1983 action based on injury to one's reputation." Cherry v. Jorling, 31 F. Supp. 2d 258, 265 (W.D.N.Y. 1998). "Most, if not all, charges of defamation are inevitably accompanied by financial loss. . . . [H]owever, . . . financial harm resulting from government defamation alone is insufficient to transform a reputation interest into a liberty interest." Sturm v. Clark, 835 F.2d 1009, 1012-13 (3d Cir. 1987)(citing Paul v. Davis, 424 U.S. 693 (1976)). Here, the plaintiff's employment was never terminated and she was not deprived of any legal right or status. The plaintiff's sole claimed harm, financial loss that was a direct deleterious effect of the alleged defamation, is not sufficient

to support a stigma-plus claim.

Accordingly, the plaintiff has not created a genuine issue of material fact as to whether she suffered an adverse action restricting her liberty in addition to a stigmatizing statement, and the motion is being granted as to Count Four.

**D. Count Seven: § 1983 Monell Claim**

As discussed above, the plaintiff has not created a genuine issue of material fact as to whether there was a violation of her rights under the United States Constitution. As a consequence, there is no genuine issue of material fact as to whether such a violation occurred as a result of any policy, custom or practice of defendant MDC. Accordingly, the motion is being granted as to Count Seven.

**E. Count Five - Defamation, and Count Eight - Intentional Inflication of Emotional Distress**

Because summary judgment has been granted as to all of the plaintiff's federal-law claims, the court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the plaintiff's remaining state law claims for defamation and intentional infliction of emotional distress. See Valencia ex rel. Franco v. Lee, 316 F. 3d 299, 305 (2d Cir. 2003)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction

over the remaining state-law claims.")(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion for Summary Judgment (Doc. No. 59) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 1st day of July 2011 at Hartford, Connecticut.

                                                /s/AWT
                                    Alvin W. Thompson
                            United States District Judge